## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL CRIHFIELD** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:24-cv-377-HSO-BWR** |
| | § | |
| | § | |
| **BELLSOUTH** | § | |
| **TELECOMMUNICATIONS, LLC,** | § | |
| ***d/b/a AT&T Mississippi*, ADCOCK** | § | |
| **PROPERTY MANAGEMENT, LLC,** | § | |
| **LBS GROUP, LLC, and JOHN DOES** | § | |
| **1-10** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF MICHAEL CRIHFIELD'S MOTION [6] FOR REMAND

Plaintiff Michael Crihfield's Motion [6] seeks remand to state court because he and Defendant Adcock Property Management, LLC, are not of diverse citizenship. Only Defendant LBS Group, LLC, has responded, arguing that Defendant Adcock Property Management, LLC, was improperly joined. The Court concludes that this case must be remanded to the Circuit Court of Harrison County, Mississippi, First Judicial District, where it was originally filed.

## I. BACKGROUND

On September 26, 2024, Plaintiff Michael Crihfield ("Plaintiff") filed suit in the Circuit Court of Harrison County, Mississippi, First Judicial District, naming as Defendants Bellsouth Telecommunications, LLC, doing business as AT&T Mississippi ("AT&T"), Adcock Properties, LLC, LBS Group, LLC ("LBS"), and John Does 1-10. State Court Record [1-2] at 3. On November 5, 2024, Plaintiff amended

his Complaint, dismissing Adcock Properties, LLC, and naming Defendant Adcock

Property Management, LLC ("Adcock") in its place. *Id.* at 23-24, 35. There is no

dispute that Plaintiff and Defendant Adcock are citizens of Mississippi. Not. [1] at

2-4. Nevertheless, Defendants removed this case on grounds of diversity

jurisdiction, arguing that Defendant Adcock was improperly joined to defeat

diversity. *See id.* at 4-8; Joinders [3]; [15].

Plaintiff was a resident of Long Beach Square, an apartment complex located

in Long Beach, Mississippi, and owned by LBS, which hired Adcock as its "corporate

property manager." State Court Record [1-2] at 23-24, 35. Hasmig Lee Kosinski

("Kosinski") was the "onsite property manager . . . who was acting in the course and

scope of her employment or agency with LBS and/or ADCOCK." *Id.* (emphasis in

original omitted). Long Beach Square developed a rodent problem because of

"inadequate pest control and maintenance, resulting in rodents chewing through

the cable lines located in crawl spaces above the apartments." *Id.* During AT&T's

repair of the cable lines, it ran wires on the ground in public areas of the apartment

complex as a temporary solution, "with burial to be performed within two weeks of

installation." *Id.* at 37. Plaintiff alleges that these wires remained for months,

creating a dangerous condition, and that "[t]he 'warning' . . . was inadequate and

provided no warning to anyone walking before sunrise or after sundown" because

there was insufficient lighting. *Id.* at 37-38.

2

Plaintiff claims that he notified "Kosinski and/or DOE"[1] of the exposed cables and "was informed by her that: 1) she did not know if AT&T was ever going to bury the lines and 2) if he wanted the cables removed he would not have internet." *Id.* at 37-38 (emphasis in original omitted). He alleges that "Kosinski and/or DOE individually and acting on behalf of LBS and ADCOCK took no action to correct the dangerous condition or provide visible notice for the public, employees or residents of Long Beach Square." *Id.* at 38. Plaintiff also made AT&T aware of his concerns, but it did not take any action, nor did any other Defendant. *Id.* So, before sunrise on the morning of February 5, 2023, while Plaintiff was walking his dog, he tripped on the wires, which wrapped around his left ankle, causing him to suffer permanent injuries including a leg amputation. *Id.*

The Amended Complaint contains two counts, Count One for negligence and Count Two for gross negligence. *Id.* at 39-42. The Notice [1] of Removal asserts that Adcock, the lone non-diverse Defendant, is improperly joined, such that its citizenship should be disregarded for purposes of determining subject-matter jurisdiction. *See* Not. [1] at 3-4. It also contends that the Amended Complaint is a shotgun pleading and does not allege any individual act on the part of Adcock, such that a claim cannot be maintained against it. *Id.* at 5-8.

---

[1] "DOE" refers to the "John Does 1-10" named as Defendants in the Amended Complaint. State Court Record [1-2] at 35-36 ("Defendant DOE is currently unknown, persons, companies, or entities whose identity is unknown, despite due diligence, who caused or contributed to the incident, injuries and damages sued on." (emphasis in original omitted)); *see also* 28 U.S.C. § 1441 (b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

In seeking remand, Plaintiff stresses that all he must do to join Adcock is state a "potentially viable claim" against it, Mem. [7] at 6, and he points to eleven factual allegations in the Amended Complaint that support his claim of negligence as against Adcock:

1. LBS owned Long Beach Square (Par. 8);

2. ADCOCK was hired by LBS to manage Long Beach Square (Par. 9);

3. The onsite property manager was Hasmig Lee Kosinski[, who] was acting in the course and scope of her employment or agency with LBS and/or ADCOCK (Par. 10);

4. Michael Crihfield was a resident of Long Beach Square (Par. 11);

5. Long Beach Square developed a rodent problem that resulted in rodents chewing through the AT&T cables (Par. 12);

6. The problem was reported to AT&T who initiated a repair in late 2022 by running a cable "temporarily" on the ground outside of the [P]laintiff's apartment.  (Par. 13);

7. The unburied exposed cable created a dangerous condition and a tripping hazard; (Pars. 14-18);

8. Michael Crihfield notified Hasmig Lee Kosinski, ADCOCK's onsite manager of his concerns about the still unburied lines and was met with a complete disregard for his safety including indifference as to when the lines would be buried and a directive that the lines should be kept where they are or he would have no internet (Par. 19);

9. Plaintiff alleges that Kosinski was acting on behalf of LBS and ADCOCK and they took no actions to correct the ongoing danger of the unburied lines on their property (Par. 20);

10. Specifically, [P]laintiff has alleged that the Defendants "individually and collectively" had notice of the location and condition of the wires in the public space yet took no corrective action for four months.  (Par. 22);

11. The Defendant[s'] collective conduct resulted in a fall on February 5, 2023[,] resulting in the Plaintiff's leg amputation with multiple surgeries. (Par. 25-26)

4

*Id.* at 6-7 (brackets in original changed to parentheses).  Plaintiff maintains that

these factual allegations support a claim that Adcock, operating through its agent

Kosinski, negligently violated its duty of care to maintain a reasonably safe

premises and to warn of any potential hazards.  *Id.* at 8.

Only LBS has responded to Plaintiff's Motion [6].  It takes the position that

the Amended Complaint constitutes a shotgun pleading because it makes collective

allegations that fall short of the requirements of Federal Rule of Civil Procedure 8.

Mem. [17] at 5.  On the merits, according to LBS, Plaintiff cannot state a premises

liability claim against Adcock because "premises liability is generally assessed

against an owner, not a property manager." *Id.* at 7.  In the alternative, any

premises liability claim fails because Plaintiff knew of the wires, which were in

open and plain view. *Id.*  LBS also raises an estoppel argument, pointing out that

Plaintiff previously stipulated in a lawsuit involving this matter "that any

subsequent suit filed against these defendants will accord with this Court's

diversity jurisdiction." *Id.* at 8.

Plaintiff counters LBS's shotgun pleading argument by walking through the

allegations of the Amended Complaint to emphasize the specific factual claims he

makes against Adcock.  Mem. [19] at 3-6.  He takes the position that Kosinski had

the authority to act as it related to the cables, and that when she failed to do so, she

acted negligently, *id.* at 7-8, and that the Court is to resolve any uncertainty in

state law on this point in favor of remand, *id.* at 9.  He further advances that

whether his claim fails because the wires were in open and plain view is a jury

question. *Id.* at 9-10.   Finaly, Plaintiff contends that the purported stipulation

referenced by LBS is irrelevant because it occurred in a previously filed case where

Adcock was not named as a Defendant, and that even if that case were relevant,

subject-matter jurisdiction cannot be conferred by stipulation. *Id.* at 12-13.

## II.  DISCUSSION

A.      Relevant Law

1.      Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction and "must presume that a

suit lies outside this limited jurisdiction, and the burden of establishing federal

jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Ins.*

*Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  In removed cases, the existence of subject-

matter jurisdiction is assessed at the time of removal.  *Manguno v. Prudential Prop.*

*and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("To determine whether

jurisdiction is present for removal, we consider the claims in the state court petition

as they existed at the time of removal." (citations omitted)).  "Any ambiguities are

construed against removal because the removal statute should be strictly construed

in favor of remand."  *Id.*

Under 28 U.S.C. § 1332(a), a federal court has original subject-matter

jurisdiction where the matter in controversy exceeds $75,000.00 and is between

citizens of different states.  *See* 28 U.S.C. § 1332(a).  The parties do not dispute that

the amount in controversy is satisfied in this case or that Plaintiff and Adcock are

citizens of the same state.  The pertinent question is whether Adcock has been

improperly joined, such that its citizenship should be disregarded for purposes of

establishing diversity. *See, e.g.*, *Williams v. Homeland Ins. Co. of New York*, 18

F.4th 806, 812 (5th Cir. 2021) ("If a non-diverse defendant is improperly joined,

however, a district court can disregard the citizenship of that defendant for the

purposes of evaluating its jurisdiction."). The United States Court of Appeals for

the Fifth Circuit has explained that

> [i]mproper joinder occurs when a plaintiff is unable to establish a cause
> of action against the non-diverse party in state court. The test is
> whether there is no possibility of recovery by the plaintiff against an in-
> state defendant or no reasonable basis for predicting recovery against
> an in-state defendant. To determine if there was improper joinder, the
> district court may conduct a Rule 12(b)(6)-type analysis, looking initially
> at the allegations of the complaint to determine whether the complaint
> states a claim under state law against the in-state defendant.
> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is
> no improper joinder.

*Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1046 (5th Cir. 2021) (quotations and

footnotes omitted).

"The burden of persuasion on those who claim improper joinder is a heavy

one." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016)

(quotations omitted). A court must "view all unchallenged factual allegations,

including those alleged in the complaint, in the light most favorable to the plaintiff

and resolve any contested issues of fact and any ambiguities of state law in the

plaintiff's favor." *Id.* (quotations omitted). To survive a Rule 12(b)(6) challenge, a

complaint does not need detailed factual allegations, but it must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further,

"a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)).

2.    Shotgun Pleadings

"Vague, imprecise 'shotgun' pleading[s] cloud[] the legal and factual issues in a case" and are also subject to dismissal under Rule 12(b)(6). *Payne v. Univ. of S. Mississippi*, No. 1:12-CV-41-KS-MTP, 2014 WL 691563, at *2 n.3 (S.D. Miss. Feb. 21, 2014), *on reconsideration in part*, No. 1:12-CV-41-KS-MTP, 2014 WL 1355449 (S.D. Miss. Apr. 7, 2014), *and aff'd*, 643 F. App'x 409 (5th Cir. 2016); *see also Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014) ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer."). "A 'shotgun pleading' is a pleading with 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claims [are] brought against." *Jones v. Grapeland Indep. Sch. Dist.*, No. 24-40194, 2024 WL 4490604, at *1 n.1 (5th Cir. Oct. 15, 2024) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). As opposed to the "short and plain statement" requirement contemplated by Rule 8, "shotgun pleadings contain several counts within a complaint with each count 'incorporating by reference the

allegations of its predecessors, leading to a situation where most of the counts (i.e.,

all but the first) contain irrelevant factual allegations and legal conclusions.'"

*Copeland v. Axion Mortg. Grp. LLC*, No. 1:16-cv-159-HSO-JCG, 2016 WL 4250431,

at *4 (S.D. Miss. Aug. 11, 2016) (quoting *Griffin v. HSBC Mortg. Servs., Inc.*, No.

4:14-cv-132-DMB-JMV, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015)).

3.    Premises Liability Claims in Mississippi

In Mississippi, "the analysis of premises liability involves three steps." *Titus

v. Williams*, 844 So. 2d 459, 467 (Miss. 2003). "First, it is necessary to determine

whether the injured person is an invitee, licensee, or trespasser.  Next, the duty

owed to the injured person must be determined.  The final step is the determination

of whether the landowner breached that duty." *Massey v. Tingle*, 867 So. 2d 235,

239 (Miss. 2004).

For purposes of this Motion [6], the parties do not dispute that Plaintiff

qualified as an invitee.  Mem. [17] at 6; Mem [19] at 3-4, 9-10.  "A landowner owes

an invitee the duty 'to keep the premises reasonably safe and when not reasonably

safe to warn only where there is hidden danger or peril that is not in plain and open

view.'" *Renner v. Retzer Res., Inc.*, 236 So. 3d 810, 814 (Miss. 2017) (quoting

*Mayfield v. The Hairbender*, 903 So. 2d 733, 737 (Miss. 2005)).  Importantly, the

Mississippi Supreme Court has "found that the 'two duties—(1) to keep the

premises reasonably safe, and (2) to warn of hidden dangers—are separate,' that

'[t]he breach of either duty supports a claim of negligence,' and that '[e]ach must be

separately analyzed.'" *Vivians v. Baptist Healthplex*, 234 So. 3d 304, 307 (Miss.

9

2017) (alteration in original) (quoting *Mayfield*, 903 So. 2d at 738).  And "[i]n every

premises-liability case, the plaintiff must show that a dangerous condition exists.*"*

*Hartford v. Beau Rivage Resorts, Inc.*, 179 So. 3d 89, 91 (Miss. Ct. App. 2015)

(emphasis in original omitted).

B.     Analysis

1.     Whether the Amended Complaint is a Shotgun Pleading

LBS argues the Amended Complaint is a shotgun pleading because it sets

forth collective allegations or legal conclusions, Mem. [17] at 4-6, but an

examination of the pleading reveals otherwise, *see* State Court Record [1-2] at 35-

42.  The Amended Complaint specifically alleges that LBS hired Adcock to manage

the property, with Kosinski as the onsite property manager and acting as an agent

of LBS "and/or" Adcock, and that Kosinski was warned of the dangerous condition

but took no action to correct it.  *Id.* at 36-38.  The Amended Complaint specifically

alleges the circumstances leading to placement of the wire, Plaintiff's reaction to it,

and then the subsequent events leading to his injury.  *Id.*  To the extent Plaintiff

alleges that Adcock and LBS acted jointly, he did not do so conclusorily, as he

explained that "ADCOCK was hired by LBS as the corporate property manager."

*Id.* at 36 (emphasis in original omitted).

Then, in Count One, Plaintiff differentiates the facts which purportedly

render AT&T liable from those which make LBS and Adcock liable.[2]  *Id.* at 39-41.

Plaintiff alleges that the facts supporting AT&T's liability include the failure to

---

[2] Having found Count One sufficiently pled under Federal Rule of Civil Procedure 8, the Court need
not consider Count Two.

"move, bury, or make safe the cable where it knew of the dangers it had caused" and that LBS and Adcock are liable for failing "to move the cable or ensure that AT&T moved or buried them." *Id.* (emphasis in original omitted).  Plaintiff also points out in Count One that LBS "and/or" Adcock are liable for the actions of Kosinski, whereas AT&T is liable through the actions of its workers "who failed to safely bury the wires on the premises." *Id.* at 40 (emphasis in original omitted).

Although it may appear that some characteristics of a shotgun pleading are present here, "[a] complaint need not . . . articulate a perfect statement of the legal theory supporting the claim asserted." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015).  And while the allegations against each Defendant are similar, the Amended Complaint sufficiently places each Defendant on notice of which actions are the basis of its own potential liability.  *See, e.g.*, *Wilson v. City of Greenville, Mississippi*, No. 4:22-cv-64-GHD-DAS, 2023 WL 7021295, at *3 (N.D. Miss. Oct. 25, 2023) (rejecting the defendants' argument that a complaint's use of some collective allegations and "incorporated by reference" language made it a shotgun pleading because although the "allegations could certainly be clearer," the court could "decipher which claims are being asserted against which defendants").  In Adcock's case, these factual allegations include that it was hired by LBS, and that its employee, Kosinski, was informed of a dangerous condition, but did not take the necessary steps to ensure a reasonably safe premises existed.  *See* State Court Record [1-2] at 35-42.

The Amended Complaint also lacks other elements of a shotgun pleading, such as irrelevant factual allegations and conclusions, or immaterial facts not obviously connected to the cause of action.[3]  *See Weiland*, 792 F.3d at 1322-23 (discussing the four types of shotgun pleadings).  So, although the Amended Complaint "may not be a model of clarity," "it sufficiently complies with Rule 8." *Collins v. Treasure Bay LLC*, No. 1:19-cv-51-LG-RHW, 2019 WL 7875053, at \*2 (S.D. Miss. Aug. 5, 2019).

2.      Whether the Amended Complaint States a Claim Against Adcock

Turning to the question of improper joinder, LBS argues that Plaintiff has not stated a premises liability claim against Adcock because under Mississippi products liability law, only an owner can be liable, and the dangerous condition here was in plain and open view.  Mem. [17] at 7.  LBS cites two cases to support its claim that property managers are not generally held responsible on a theory of premises liability.  *See id.* (citing *Williams v. Walmart Stores East, LP*, No. 3:23-cv-3142-TSL-RPM, 2024 WL 709210, at \*4 (S.D. Miss. Feb. 21, 2024); *Splain v. Kroger Ltd. P'Ship, I,* No. 3:11-cv-711-HTW-LRA, 2012 WL 13075554, at \*3 (S.D. Miss. May 15, 2012)).  Those cases found that "district courts interpreting Mississippi

---

[3] As for the "incorporated by reference" language found in the Amended Complaint, such language is generally inappropriate when it creates "a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Copeland*, 2016 WL 4250431, at \*4. That is not the case here.  The "incorporated by reference" language appears in two places, at the beginning of Count One and at the beginning of Count Two.  *See* State Court Record [1-2] at 7, 9. Defendants have not offered any authority suggesting that facts relevant to a claim for negligence are necessarily irrelevant to a claim for gross negligence.  *See Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999) ("'Disregard' of the safety of others is at least negligence if not gross negligence.").  Thus, at least in this case, repetition of the facts leading to negligence are not necessarily "irrelevant factual allegations and legal conclusions" as to gross negligence.

law, have found that a manager or administrator must be shown to have been negligent in some way to bear individual liability." *Splain*, 2012 WL 13075554, at *3; *see also Walmart Stores*, 2024 WL 709210, at *4 (quoting *Splain*, 2012 WL 1307554, at *3).

Both of those cases cite to *Smith v. Petsmart Inc.*, 278 F. App'x 377 (5th Cir. 2008). *See Splain*, 2012 WL 1307554, at *3; *Walmart Stores*, 2024 WL 709210, at *4. In *Petsmart*, the Fifth Circuit addressed a "district court's ruling that [a store manager] was improperly joined to defeat diversity jurisdiction." *Petsmart*, 278 F. App'x at 379. In *Petsmart*, a plaintiff has allegedly tripped over a forklift because the store manager negligently failed to maintain a safe premises. *Id.* at 378-80. The Fifth Circuit noted that "Mississippi law is unclear on the issue of whether a store manager, in addition to a store owner, can be personally liable in premises liability cases[,]" but pointed out that

> [t]he Mississippi Supreme Court has stated that "the owner, occupant, or *person in charge* of premises owes to an invitee or business visitor a duty of exercising reasonable or ordinary care to keep the premises in reasonably safe and suitable condition or of warning [the] invitee of dangerous conditions not readily apparent which [the] owner knows or should know of in the exercise of reasonable care."

*Id.* (alteration and emphasis in original) (quoting *Mayfield*, 903 So. 2d at 738). Because it was required to resolve all uncertainties in state law in the plaintiffs' favor, the Fifth Circuit assumed that a store manager could qualify as a "person in charge[.]" *Id.* It then turned to the question of whether the plaintiff had "established a reasonable possibility of recovery against [the store manager] based on the fact that she was a person in charge of Petsmart's premises." *Id.* In

13

answering this question, "[*u*]*nless it is clear* that the non-diverse defendants have

been improperly joined[,] the case should be remanded to the state court form [sic]

which it was removed." *Id.* at 381-82 (emphasis in original) (quotations omitted).

The Fifth Circuit then found that the plaintiffs' allegations that the store manager

was the person in charge of the premises and was responsible for any employee

operating the forklift were sufficient to require remand to state court. *Id.* And even

though the store manager disputed that she was responsible for the forklift, the

Fifth Circuit resolved this factual dispute in the plaintiffs' favor and held that

resolving the merits of this issue was for a state-court jury. *Id.*

Analysis of the Amended Complaint here leads to a similar conclusion. The

Amended Complaint alleges that Kosinski was the onsite property manager, and

that she was acting in the scope of her employment with Adcock in this role. State

Court Record [1-2] at 36-38. While a store manager differs from a property

manager of an apartment complex, LBS has not cited any caselaw, nor has the

Court located any, stating that a property manager cannot be considered a "person

in charge of premises" under Mississippi law. *See generally* Mem. [17]. Thus, as in

*Petsmart*, the Court must resolve this ambiguity in state law in Plaintiff's favor and

presume that a property manager acting in the scope of her employment can qualify

as a "person in charge of premises[,]" such that her employer, Adcock, may be held

vicariously liable for any negligence on her part. *See Petsmart*, 278 F. App'x at 380.

The next question is whether the Amended Complaint plausibly alleges a

claim of negligence against Adcock, *see id.* at 380, that is whether it contains

14

sufficient factual detail to plausibly allege a negligent act or omission leading to

Plaintiff's injury, *see Splain*, 2012 WL 13075554, at *3; *Walmart Stores*, 2024 WL

709210, at *4.  Simply put, it does.  Plaintiff alleges that Kosinski was made aware

of the exposed wires, and "acting on behalf of LBS and/or ADCOCK took no action

to correct the dangerous condition or provide visible notice for the public, employees

or residents of Long Beach Square."  State Court Record [1-2] at 37-38 (emphasis in

original omitted).   This allegation is sufficient to create a reasonable possibility

that Kosinski, and thus, Adcock, failed to act reasonably.

As for whether the wires were in plain and open view and whether this

defeats Plaintiff's claim, Mississippi law is clear that while such a fact may absolve

a person in charge of the duty to warn, it would not relieve Kosinski or Adcock of

any duty to maintain a reasonably safe premises.  *See Vivians v. Baptist Healthplex*,

234 So. 3d 304, 308 (Miss. 2017) ("[L]andowners cannot avoid liability for failure to

repair a dangerous condition merely by pointing out that the dangerous condition

was open and obvious[.]"); *Mayfield*, 903 So. 2d at 739 ("That a dangerous condition

may be open and obvious has no nexus to a landowner's alleged negligence for

allowing the hazard to remain.  And it does not eliminate the landowner's duty to

maintain the premises in a reasonably safe condition.").

Simply put, LBS has not carried its heavy burden of demonstrating that

there is no possibility of recovery by Plaintiff against the in-state Defendant,

Adcock.

C.       Judicial Estoppel

LBS next argues that Plaintiff should be estopped from seeking remand because in a previously filed case against LBS and AT&T regarding the same incident, the parties stipulated to a dismissal without prejudice, in which Plaintiff stated that he "affirms that any subsequent suit filed against these defendants will accord with this Court's diversity jurisdiction."  Stip. of Dismissal at 2, *Crihfield v. LBS Group, LLC*, 1:23-cv-242-HSO-BWR (S.D. Miss. May 3, 2024), Doc. No. 28.  Even if the Court were to ignore that the stipulation was made in a separate case that did not involve Adcock, the parties cannot stipulate to subject-matter jurisdiction.  *See Punch v. Bridenstine*, 945 F.3d 322, 330 (5th Cir. 2019) ("[S]tipulations cannot create subject-matter jurisdiction."); *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 284 (5th Cir. 2007) ("[S]ubject matter jurisdiction 'cannot be conferred by consent, agreement, or other conduct of the parties.'" (quoting *In re Tex. Consumer Fin. Corp.*, 480 F.2d 1261, 1266 (5th Cir.1973)).

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.  The Amended Complaint states a claim against Adcock sufficient to survive a Rule 12(b)(6) challenge, and at a minimum, it is not "*clear* that the non-diverse defendants have been improperly joined[.]"  *Petsmart*, 278 F. App'x at 379 (emphasis in original).  LBS has not carried its heavy burden on a theory of improper joinder.  Plaintiff's Motion [6] for Remand must be granted, and this case

will be remanded to the Circuit Court of Harrison County, Mississippi, First

Judicial District, where Plaintiff originally filed it.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff

Michael Crihfield's Motion [6] for Remand is **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the above-

captioned cause is hereby remanded to the Circuit Court of Harrison County,

Mississippi, First Judicial District, and that a certified copy of this Order of remand

shall be immediately mailed by the Clerk to the clerk of the state court pursuant to

28 U.S.C. § 1447(c).

**SO ORDERED AND ADJUDGED**, this the 20th day of March, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE